35 F.3d 106
 Ann Marie COLSON, on Behalf of her infant daughter Laura
COLSON; Darryl Battaglia; Valerie White,
individually and on behalf of all others
similarly situated, Plaintiffs-Appellees,
v.
Eugene SILLMAN, as Medical Director of Erie County; David
Bogdan, as supervisor of Erie County's Physically
Handicapped Children's Program; Donald B. Thomas, as
Commissioner of the Erie County Department of Health, Defendants,
Fe A. Cardona, as Director of the Special Children Services,
Bureau of Child Health, New York State Department of Health;
David Axelrod, as Commissioner of the New York State
Department of Health, Defendants-Appellants.
 No. 1370, Docket 93-7623.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1994.
Decided Sept. 15, 1994.
 
 John McConnell, Asst. Atty. Gen., State of N.Y., Albany, NY (G. Oliver Koppell, Atty. Gen. of the State of N.Y., Peter Schiff, Deputy Sol. Gen., of counsel), for defendants-appellants.
 James R. Sheldon, Neighborhood Legal Services, Inc., Buffalo, NY, for plaintiffs-appellees.
 Before: CARDAMONE and WINTER, Circuit Judges.*
 WINTER, Circuit Judge:
 
 
 1
 Officials of the New York State Department of Health appeal from Judge Arcara's order granting partial summary judgment to appellees Colson, Battaglia, White, and others similarly situated ("applicants"). See Colson ex rel. Colson v. Sillman, 852 F.Supp. 1183 (W.D.N.Y.1992). Summary judgment was granted on their claim under 42 U.S.C. Sec. 1983 that New York's Public Health Law, N.Y.Pub.Health L. Sec. 2582 (McKinney 1993), creates a "claim of entitlement" triggering procedural due process protection in the handling of claims by the Erie County Physically Handicapped Children's Program ("PHCP"). Officials of Erie County's Department of Health and PHCP ("County") do not appeal from the district court's order. Because New York law does not create an entitlement on behalf of the applicants running against the State, we vacate the district court's order to the extent that it contemplates such an entitlement.
 
 BACKGROUND
 
 2
 Applicants are (or were) physically handicapped residents of Erie County under the age of twenty-one who participate in the County's PHCP. The children in question suffer from a range of serious physical ailments that necessitate various forms of special equipment and medical attention. Although a class has not been certified, the parties have stipulated that any judgment in this action will be binding with regard to similarly situated applicants.
 
 
 3
 Title V of Article 25 of New York's Public Health Law, N.Y.Pub.Health L. Secs. 2580-84 (McKinney 1993), sets out the State's role in the treatment and rehabilitation of children with physical disabilities. Such children are defined in the statute as "any persons under twenty-one years of age who are disabled by reason of a defect or disability, whether congenital or acquired ... or who are suffering from long-term disease ... or from any disease or condition likely to result in a disability in the absence of treatment...." Id. Sec. 2581(1). The "medical service" that these children receive encompasses "such diagnostic, therapeutic, and rehabilitative care by medical and paramedical personnel, including hospital and related care, and drugs, prostheses, appliances, equipment and devices as necessary." Id. Sec. 2581(2).
 
 
 4
 In order to qualify for the provision of medical services by a PHCP, an applicant must satisfy designated criteria as to family income as well as the requirements set out in Sections 2581(1) and 2583(2). The Medical Director of a PHCP, a county official, then determines whether to grant the applicant's request for medical services. Section 2582(2) both authorizes the appropriate county official to approve medical services and specifies that "the expenses thereof, when approved by such [county health official] and duly audited, shall be a charge upon the county." For medical services that qualify under the State's guidelines, N.Y.Comp.Codes R. & Regs. tit. 10, Sec. 46, the State will reimburse the county for one-half of those expenses. N.Y.Pub.Health L. Sec. 608 (McKinney 1990).[1]
 
 
 5
 Applicants brought suit under 42 U.S.C. Sec. 1983 claiming that the County and State had violated their rights to procedural due process in the administration of the Erie County PHCP by failing to provide both timely written notice of the outcome of their applications and an administrative appeals procedure. Applicants moved for, and the district court granted, summary judgment. The district court based its decision on its finding that the PHCP administrators' lack of discretion in dispensing benefits established a "claim of entitlement," Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), sufficient to impose full federal due process responsibilities on the Erie County PHCP. The district court directed the parties to submit a joint proposal detailing procedures that comported with due process. 852 F.Supp. at 1193. All parties entered into a stipulation settling the matter, although the state reserved the right to bring the present appeal. The district court approved this proposal and incorporated it in a final judgment. Implementation of the order against the State was stayed pending the determination of this appeal.
 
 DISCUSSION
 
 6
 The County does not contest the district court's conclusion that a "claim of entitlement" runs against it. The disputed issue in this appeal, therefore, is whether applicants have a "claim of entitlement" against the State to the benefits for which they applied.
 
 
 7
 As the Supreme Court stated in Roth, 408 U.S. at 577, 92 S.Ct. at 2709, to hold a legally cognizable property-type interest in a government benefit, an applicant "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." An "entitlement" is not a constitutional right, but is derived from "an independent source such as state law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting Roth, 408 U.S. at 577, 92 S.Ct. at 2709). The property interest is not "limited by a few rigid, technical forms" but may derive from "existing rules" or "mutually explicit understandings." Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Whether the benefit invests the applicant with a "claim of entitlement" or merely a "unilateral expectation" is determined by the amount of discretion the disbursing agency retains. Plaza Health Labs. v. Perales, 878 F.2d 577, 581 (2d Cir.1989) ("[T]he existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them."). The question of entitlement thus hinges on whether "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Yale Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir.1985).
 
 
 8
 In determining that applicants have a "claim of entitlement" running against the State, both the district court and applicants rely heavily upon Section 2582(1) of the Public Health Law. Unlike Section 2582(2), which concerns county medical services programs, Section 2582(1) concerns activities of the State's Department of Health. The district court held that "[t]he mandatory language" of Section 2582(1) "serves as the basis for the legitimate expectation" because that Section states that " 'the department shall ... provide ... medical services for physically handicapped children.' " 852 F.Supp. at 1187 (emphasis added by the district court). However, the district court's rendition of Section 2582(1) omitted crucial phrases that give the State and the Department virtually total discretion. The full sentence reads: "The department shall on its own initiative provide, within the limits of the appropriations made therefor, such medical service for children with physical disabilities as in the judgment of the commissioner is needed." (emphasis added)
 
 
 9
 Section 2582(1) thus provides substantial discretion to the State and the Department. The provision of medical services is confined "within the limits of the appropriations made therefor." Section 2582(1) therefore authorizes a program which is to exist only if, when, and to the extent that appropriations are made for it. Neither applicants nor the district court claim that the New York Legislature has in fact appropriated funds to create a program pursuant to Section 2582(1). To the contrary, the State submitted an affidavit from the New York Department of Health stating that there had been no funding under Section 2582(1). A second discretionary limitation is that medical service is to be provided only "as in the judgment of the commissioner is needed." The statute thus leaves the provision of medical services to the "judgment" of state officials and provides neither direction nor constraint on that judgment. There is thus virtually nothing that is mandatory in Section 2582(1).
 
 
 10
 Moreover, the PHCPs exist pursuant to Section 2582(2), which directs that expenses incurred under the program "shall be a charge upon the county," rather than upon the State. New York counties enjoy "home rule" and are thus independently responsible for "the incurring of [their] obligations" and "the presentation, ascertainment and discharge of claims" against them. N.Y. Const. art. IX, Sec. 2(b), (c)(4) & (5). If the State is obligated at all under the statutory and regulatory scheme governing the provision of benefits to handicapped children, the obligation runs not to the recipient of the County's funds, but to the County itself under the reimbursement provision of Section 608 and associated regulations in N.Y.Comp.Codes R. & Regs. tit. 10, Sec. 46.
 
 
 11
 Applicants contend that their claim of entitlement rests not only on the assertedly mandatory language of Section 2582(1), but on the entirety of Article 25, Title V of the Public Health Law, N.Y.Pub.Health L. Secs. 2580-84, and state guidelines. We disagree. The other sections of Title V that applicants rely upon, primarily Section 2582(2), refer to county PHCPs rather than state-initiated programs. Moreover, the State regulations cited, N.Y.Comp.Codes R. & Regs. tit. 10, Sec. 46, merely outline the extent of permissible reimbursement to counties rather than dictate State aid to individuals. As the district court itself noted, county officials retain full discretion over whether to offer a PHCP and over the design of the PHCP. Most importantly, counties are "ultimately responsible for deciding whether to grant a request for medical services." 852 F.Supp. at 1188. Every pertinent initiative and decision regarding the provision of medical services thus lies with the counties. The sole role of the State is in providing partial reimbursement to the counties, and this role is not triggered until a county has taken the necessary voluntary steps.
 
 
 12
 A county's likely desire to receive partial reimbursement from the State does not diminish unfettered county discretion over PHCP benefits. Nothing in state law prevents a county from providing whatever benefits it chooses to fund. This is true even with regard to special conditions requiring medical services to be provided out of state, for which a PHCP will not be reimbursed unless it has secured prior approval from the State Department of Health. N.Y.Comp.Codes R. & Regs. tit. 10, Sec. 46.8. Although a county may choose not to provide such services for budgetary reasons, a county is free to provide them at its expense.
 
 CONCLUSION
 
 13
 Because applicants do not possess a "claim of entitlement" running against the State, we reverse the district court's grant of summary judgment to applicants.
 
 
 
 *
 Judge Timbers recused himself from the panel after oral argument. Pursuant to this court's Rule Sec. 0.14, the appeal has been heard and decided by the remaining two judges of the panel
 
 
 [1]
 New York Public Health Law Sec. 608(1) reads in relevant part:
 Whenever the commissioner of health of any county ... or ... the medical director of the physically handicapped children's program ... issues an authorization for medical service for a physically handicapped child, such county or the city of New York shall be granted state aid in an amount of fifty per centum of the amount expended in accordance with the rules and regulations established by the [New York State Department of Health] commissioner, except that such state aid reimbursement may be withheld if, on post-audit and review, the commissioner finds that the medical service rendered and furnished was not in conformance with a plan submitted by the municipality and with the rules and regulations established by the commissioner....